# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**AIDA ACEVEDO LOPEZ, et al.,**

**Plaintiffs**

**v.**                                                    **Civil No. 13-1166 (DRD)**

**VIVIAN ORTIZ, et al.,**

**Defendants.**

## OPINION AND ORDER

Pending before the Court are Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction at Docket No. 34 and Defendants' Motion for Judgment on the Pleadings at Docket No. 39. For the reasons set forth below, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED** and the Motion for Judgment on the Pleadings is **GRANTED in part and DENIED in part**.

### I.      Introduction

On February 26, 2013 Aida Acevedo Lopez, Janice De Jesus Concepción, Carmen Rivera Rivera, Iris Ruiz Rodriguez, Luz Rivera Charles, Friola Rivera Quiñones, Cydmarie Sanchez Correa, Estela Lugo, Carmen I. Gonzalez Morales, Lourdes Pardo Ortiz, Monica Gonzalez Rivera, Carmen Arcelay Mendez, Olga Gotay Lucas, Yomaira Irizarry, Wilivette Feliciano Torres and Melissa Arce Gonzalez (collectively "Plaintiffs") initiated the above-captioned case claiming

1

Civil No. 13-1166 (DRD)

Defendants' actions violated their rights under the Fifth, Eighth, and Fourteenth Amendments of the Constitution of the United States, pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, and under the Constitution and laws of the Commonwealth of Puerto Rico, in particular, P.R. LAWS ANN. tit. 31, § 1802." See Amended Complaint at Docket No. 27.

## II.   Relevant Factual Background

At the time of the filing of the complaint, Plaintiffs were incarcerated and under the custody of the Department of Corrections and Rehabilitation ("DCR") at the Vega Alta Women's correctional institution." (Docket No. 27 ¶¶ 1-17.)  On February 27, 2012, at approximately 2:00 a.m., male members of DCR's Tactical Operations Unit "stormed into" Sections 5, 6, and 7 of the Vega Alta correctional institution where approximately 100 female inmates were housed, including Plaintiffs.[1]  Id. ¶¶ 30-31.  The female plaintiffs were given plastic bags, ordered to place their belongings in them, and were "herded into the visitation area and ordered to sit on the floor." Id. ¶ 33.  The women remained in the visitation area throughout the day, were not given any medical attention, and were surrounded at all times by the Tactical Operations Unit.  (Docket No. 27 ¶ 34.)  This caused an atmosphere of "tremendous anxiety."  Id. ¶ 34.

At approximately 5:30 p.m. that same day, Defendant Sergeant Marrero ("Sgt. Marrero") entered the visitation area and called each of the Plaintiffs' names, "and announced, '[t]he butchies who act like men are going to Section 7.'"[2]  Id. ¶ 35.  "Plaintiffs were immediately relocated to Section 7, where they were kept in complete isolation from the rest of the general population in Vega Alta."  Id. ¶ 36.  Upon arrival, Plaintiff Melissa Arce González was assigned to Section 7

---

[1] Except Plaintiff Melissa Arce González, who arrived at the prison on March 1, 2012.
[2] "Las buchitas que se creen machos se van al Salón 7."  Docket No. 27 n. 3.

Civil No. 13-1166 (DRD)

"and was told she was being housed 'with the rest of the butches, where she would have no opportunity to find a girlfriend.'"[3]  Id. ¶ 37.  On March 1, 2012, Plaintiff Willivette Feliciano Torres was relocated to the general population.  Id. ¶ 38.

Plaintiffs allege there were only eight serviceable beds in Section 7 and they had to take turns sleeping on the floor.  Id. ¶ 39.  "During their segregation in Section 7, [P]laintiffs received no recreation," and "they were not allowed to eat in the dining area with the rest of the population."  Id. ¶¶ 40-41.  Plaintiffs' meals were brought to them after the rest of the population had eaten.  Id. ¶ 42.  The custodial officers told Plaintiffs that "women eat first, and then the butchies."[4]  Id.  During the meals, a custodial officer was assigned to each Plaintiff "who would order her where to sit and eat."  Id. ¶ 43.  The custodial officers would stand over Plaintiffs as they ate and many would threaten Plaintiffs with their pepper spray.  Id.

During the entirety of their segregation, Plaintiffs "were subjected to a constant barrage of verbal abuse by the custodial officers."[5]  Id. ¶ 44.  "Plaintiffs were also subjected to derogatory and discriminatory comments directly by Defendants Vivian Ortiz ("Ortiz") and Sgt. Marrero, who would direct all manner of homophobic insults at them on a daily basis."  Id. ¶ 45.  On March 2, 2012, DCR's Regional Director, Ulrich Jiménez, personally visited Section 7, listened to the Plaintiffs, and apologized to them on behalf of DCR and of then-Secretary of DCR, Jesús González Cruz.  Docket No. 27  ¶¶ 47, 48.  A few hours after Mr. Jiménez's visit, [P]laintiffs were relocated among the general population.  Id. ¶ 49.  Several of the Plaintiffs objected to being

---

[3] "Con el resto de los buchos, donde no tienes break para buscar novia."  Docket No. 27, 8, n. 4.
[4] "Las nenas comen primero y después los buchos."  Docket No. 27, 9, n. 5.
[5] Custodial officers referred to Plaintiffs as "patas sucias" ("dirty lesbians"), "buchos" ("buchies"), and "nenes" ("boys").  Docket No. 27 ¶ 44.  Section 7 was openly referred to as "bucholandia" and "el salon de los nenes."  Id.

**Civil No. 13-1166 (DRD)**

reassigned until they could speak with lawyers.  Id. ¶ 50.  Plaintiff Estela Lugo resisted being relocated and was assaulted by various correctional officers.[6]  Id.

### III.   Procedural Background

Plaintiffs filed the instant action against Defendant Vivian Ortiz, Colonel Nestor Velazquez, Samuel Jackson, Sgt. Marrero, one unnamed defendant and their spouses. (Docket No. 27 ¶¶ 18-25.)  All Defendants were sued in their personal and individual capacities.  Id. ¶ 26. Plaintiffs alleged that Defendants violated their rights under the United States Constitution, the Civil Rights Act of 1871, as amended, and under the Constitution and laws of the Commonwealth of Puerto Rico, in particular, P.R. LAWS ANN. tit. 31, § 5141.  See Docket No. 1.  Defendants then filed their Motion for a More Definitive Statement Pursuant to Federal Rule of Civil Procedure 12(e).  (Docket No. 8.) This Court granted Defendants' motion and provided Plaintiffs twenty one (21) days to amend their Complaint.  See Lopez v. Ortiz, 11 F.Supp. 3d 46 (D.P.R. 2014).  This Court instructed Plaintiffs to properly establish a cause of action against Defendants since "general allegations under the Fifth, Eighth, and Fourteenth Amendments [are] insufficient."  Id.

In their Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendants argue that this court lacks subject matter jurisdiction because Plaintiffs failed to exhaust all administrative remedies available to them before filing this suit, as mandated by the Prisoner Litigation Reform Act ("PLRA"). (Docket No. 34.)  Plaintiffs opposed the Motion to Dismiss arguing that the failure to exhaust

---

[6] Other than this broad allegation, Plaintiff Lugo did not make any other allegations regarding the assault. She failed to identify which correctional officers "assaulted" her and she failed to allege how she was assaulted. Plaintiff Lugo did not even allege excessive force under the Eighth Amendment and thus this Court shall not address this allegation.

Civil No. 13-1166 (DRD)

administrative remedies is an affirmative defense and not a jurisdictional requirement.  (Docket No. 38.)  Defendants then moved the court for Judgment on the Pleadings, pursuant to Rule 12(c) of Federal Civil Procedure, wherein they argue that Plaintiffs failed to state a cause of action under the Fifth, Eight, and Fourteenth Amendments and that the PRLA bars Plaintiffs from bringing suit under 42 U.S.C. § 1983 ("Section 1983"), again, because they failed to exhaust all administrative remedies and because they did not allege physical injury.  (Docket No. 39.)

After a careful review of all the pleadings, the court disagrees with Defendants' request regarding the jurisdictional issue but agrees, in part, with Defendant's Motion for judgment on the pleadings.  The court's reasoning follows.

IV.   **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A.  Standard for Motion to Dismiss

Federal courts are courts of limited jurisdiction and thus have the responsibility "to police the border of federal jurisdiction."  Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001).  Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") provides that a complaint will be dismissed if the court lacks subject matter jurisdiction.  Motions under Rule 12(b)(1) are brought forth to attack two different types of defects: the pleader's failure to comply with Federal Rule of Civil Procedure 8(a)(1) and the court's actual lack of subject matter jurisdiction, which may exist despite the formal sufficiency of the allegations in the complaint.  Tropical Air Flying Services, Inc. v. Carmen Feliciano de Melecio, 158 F. Supp. 2d 177, 181 (D.P.R. 2001).  It is settled that the standard followed by the court when considering a dismissal request under Rule 12(b)(1) is that the court "must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor."  Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998).  To determine

**Civil No. 13-1166 (DRD)**

jurisdiction under Rule 12(b)(1), the court may also review the evidence on record, including affidavits and depositions, as opposed to a dismissal request under any other subsection of Rule 12(b).  <u>Vaqueria Tres Monjitas, Inc. v. Laboy</u>, No. 04-1840, 2006 WL 6925764, at *5 (D. P. R. October 2, 2006).

Once the defendant challenges the court's jurisdiction through a motion to dismiss, "it is plaintiff's burden to establish that the court has jurisdiction." <u>Rolón v. Rafael Rosario & Assocs., Inc.</u>, 450 F. Supp. 2d 153, 156 (D.P.R. 2006).  "When a federal court concludes that it lacks subject matter jurisdiction, the court must dismiss the complaint in its entirety." <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 514 (2006).  "A final determination of lack of subject-matter jurisdiction of a case in a federal court, of course, precludes further adjudication of it." <u>Willy v. Coastal Corp.</u>, 503 U.S. 131, 137 (1992).

B. <u>Discussion</u>

Plaintiffs assert that this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction under 28 U.S.C. § 1367.  Docket No. 27 at 2-3.  Under Section 1331 of the United States Code, "the district courts [ ] have original jurisdiction of all civil actions arising under the Constitution . . . of the United States." 28 U.S.C. § 1331.  "The vast majority of cases brought under the general federal question jurisdiction of the federal courts are those in which federal law creates the cause of action." <u>Merrell Dow Pharmaceuticals v. Thompson</u>, 478 U.S. 804, 808 (1986).  Section 1343 of the United States Code states, in relevant part, as follows:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons

Civil No. 13-1166 (DRD)

within the jurisdiction of the United States; (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

28 U.S.C. § 1343.

Although Plaintiffs did not cite to a specific subsection of 1343, the United States Supreme Court has previously held that section ". . . 1343(3) and [section] 1983 unquestionably authorize[] federal courts to entertain suits to redress the deprivation, under color of state law, of constitutional rights." Hagans v. Lavine, 415 U.S. 528, 538 (1974).

Supplemental jurisdiction is conferred in district courts by 28 U.S.C. § 1367 which states, in relevant part, that if the district court has original jurisdiction over a civil action, then the district court shall have supplemental jurisdiction over "all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  To qualify for supplemental jurisdiction, "the state and federal claims must derive from a common nucleus of operative fact."  United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966).  In other words, if one were to consider the claims "without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding. . . ." Id.

Here, Plaintiffs did not specifically use the words "under color of state law" in their complaint.  (Docket No. 27 ¶ 18-22.)  However, all of the facts alleged by Plaintiffs transpired under the umbrella of the DCR.  At all relevant times, Defendants were all employed, one way or another, by DCR and acted in their official capacities as prison officials.  The alleged violations occurred while Plaintiffs were "incarcerated under the custody of the DCR at the Vega Alta women's correctional institution."  Id. ¶¶ 1-17.  These allegations all lead to the inference that

Civil No. 13-1166 (DRD)

Defendants were acting under color of state law during the alleged violations as they were DCR's employees and the discrimination took place in a DCR prison.

Defendants' argument that this Court lacks jurisdiction because Plaintiffs failed to exhaust all administrative remedies before bringing suit is incorrect.   As Plaintiffs argued in their Opposition to Motion to Dismiss, the exhaustion requirement is an affirmative defense to be raised and proven by the defendants, not a jurisdictional prerequisite.  Ramos v. Patnaude, 640 F.3d 485, 488 (1st Cir. 2011)    (citing Woodford v. Ngo, 548 U.S. 81, 101 (2006) and Jones v. Bock, 549 U.S. 199, 212 (2007)).  Thus, Plaintiffs' claim cannot be dismissed under Rule 12(b)(1) when Defendants claim failure to exhaust administrative remedies.   Hernandez-Vazquez v. Ortiz-Martinez, No. 09-01743, 2010 WL 132343, at *3 (D.P.R. 2010).

Regarding supplemental jurisdiction, the claims Plaintiffs are making under the Constitution and laws of the Commonwealth of Puerto Rico arise out of the same factual allegations as the federal claims.  Therefore, they do arise out of the same common nucleus of operative fact and qualify for supplemental jurisdiction under 18 U.S.C. § 1367. This Court has subject matter jurisdiction over all causes of action in this suit. Accordingly, Defendants' motion to dismiss is hereby **DENIED**.

## V.    Motion for Judgment on the Pleadings

### A.  Standard of Review

Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") provides that a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial.  A motion under Rule 12(c) is treated much the same as a motion under Rule 12(b)(6).  Aponte-Torres v. University of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006).  The court must review the facts

**Civil No. 13-1166 (DRD)**

contained in the pleadings in the light most favorable to the non-movant and draw all reasonable inferences in their favor.  Id.  "A court may not grant a defendant's Rule 12(c) motion 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) (quoting George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 553 (2nd Cir. 1977)).  To survive a Rule 12(c) motion, a complaint must contain factual allegations that raise a right to relief above the speculative level.  Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  Under Rule 12(c) there is no resolution of contested facts meaning that the court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point.  R.G. Financial Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006) (citing Rivera-Gomez, 843 F.2d at 635).

        "Where a motion for judgment on the pleadings introduces materials dehors the records for the court's consideration, the ground rules change."  Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 38 (1st Cir. 2004).  If the court does not exclude the outside materials, the summary judgment standard governs the disposition of the motion.[7]  Id.  A court may convert a motion for judgment on the pleadings to a motion for summary judgment when: (1) the party opposing the motion is given adequate notice of the conversion, and (2) is given a reasonable opportunity to present material made pertinent to the motion for summary judgment.  Id.  (citing Collier v. City of Chicopee, 158 F.3d 601, 603 (1st Cir. 1998)).  "Express notice is not required."  Id.

---

[7] "If, on a motion [for judgment on the pleadings], matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under [Federal Rule of Civil Procedure] 56." FED.R.CIV.P. R. 12(d).

9

Civil No. 13-1166 (DRD)

Summary judgment may be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Reder, 355 F.3d at 39. After the movant states that there is no evidence supporting the nonmoving party's case, the burden shifts to the nonmovant to establish "the existence of at least one fact issue which is both 'genuine' and 'material'." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). A genuine issue is one that can be properly resolved "only by a finder of fact because [it] may reasonably be resolved in favor of either party." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). A material issue is one that "affect[s] the outcome of the suit, that is, an issue which, perforce, needs to be resolved before the related legal issues can be decided." Id. (citations omitted).

B. Conversion to Motion for Summary Judgment

Plaintiffs argued in their Opposition to Defendants' Motion for Judgment on the Pleadings that if Defendants wanted their motion to be examined as a motion for summary judgment, then it must be denied because it does not comply with Rule 56's requirements. Docket No. 46, at 10. This Court disagrees and finds that conversion of Defendants' motion for judgment on the pleadings, under Rule 12(c), to a motion for summary judgment, under Rule 56, is appropriate. The court reasons as follows.

This case assimilates Reder where the First Circuit determined that the district court correctly converted a motion for judgment on the pleadings to a motion for summary judgment as the notice and opportunity requirements were fully satisfied. 355 F.3d at 38. After the pleadings were closed, the plaintiff-appellee filed a motion for judgment on the pleadings and incorporated

10

Civil No. 13-1166 (DRD)

by reference "a plethora of evidentiary submissions." Id.  Reder filed a memorandum of law in response.  Id.  The First Circuit determined that although the district court did not give Reder explicit notice of the conversion, the attachment of outside materials to a motion for judgment on the pleadings provides the nonmovant constructive notice that the court may, if it so chooses, apply the summary judgment standard.  Id.  Additionally, the First Circuit found that Reder had "ample time" to present evidence in opposition as the district court did not take action on the motion for judgment on the pleadings until 18 calendar days after it was filed.  Id.  "This interval exceeded the ten-day period specified in Rule 56(c)."  Id.  Thus, the conversion was within the district court's discretion.  Id. at 39.

Here, both requirements are well-satisfied.  First, Defendants attached outside documents to their motion for judgment on the pleadings.  These outside materials effectively put Plaintiffs on constructive notice that this Court may apply the summary judgment standard, just like the incorporations of evidence served as constructive notice in Reder.  Second, Plaintiffs had plenty of time to present evidence in opposition –over 23 calendar days– and merely filed a memorandum of law.  As such, both the notice and opportunity requirements were satisfied hence the court has discretion to convert Defendants' motion for judgment on the pleadings to a motion for summary judgment.  The court proceeds pursuant to said discretion.

### C.  Discussion

#### a.  Prisoner Litigation Reform Act ("PLRA") and the Exhaustion Requirement

Congress enacted the PLRA in 1996 following a sharp increase in prisoner litigation in federal courts to bring the litigation under control and to eliminate unwarranted federal-court

**Civil No. 13-1166 (DRD)**

interference with the administration of prisons. <u>Woodford</u>, 548 U.S. at 94. "A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision, § 1997e(a)." <u>Id.</u> (citing <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002)). 42 U.S.C. § 1997e(a) ("Section 1997e(a)") states that "no action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (emphasis added). Here, Plaintiffs are suing under 42 U.S.C. § 1983 ("Section 1983") which states, in relevant part, as follows:

> Every person who, under color of any statute . . . of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other property proceeding for redress . . .

42 U.S.C. § 1983.

Exhaustion of administrative remedies under Section 1997e(a) serves two main purposes. <u>Woodford</u>, 548 U.S. at 90. First, it provides an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." <u>Id.</u> (citations omitted). Second, it promotes efficiency as claims can generally be resolved more quickly and economically in proceedings before an agency than in litigation in federal court. <u>Id.</u> "Even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." <u>Id.</u> The exhaustion of administrative remedies is not discretionary but mandatory. "A prisoner must . . . exhaust administrative remedies even where the relief sought –monetary damages- cannot be granted by the administrative process." <u>Id.</u> at 85

**Civil No. 13-1166 (DRD)**

(emphasis added). "[E]xhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983." Id. (emphasis added); see also Porter v. Nussle, 534 U.S. 516, 520 (2002) (finding that Section 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences).

"The defendant carries the burden of proving that the plaintiff failed to exhaust all available administrative remedies before filing suit." Cruz-Berrios v. Oliver-Baez, 792 F. Supp. 2d 224, 228 (D.P.R. 2011) (citing Cruz Berrios II, 630 F.3d 7, 11 (1st Cir. 2010)). To satisfy the burden, the defendant must prove that: (1) administrative remedies were in fact available to the plaintiff, and (2) the plaintiff failed to exhaust them. Id. The boundaries of proper exhaustion are defined by the prison's requirements, not the PLRA. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Medina-Claudio v. Rodriguez-Mateo, the First Circuit affirmed the lower court's dismissal because the plaintiff failed to exhaust administrative remedies. 292 F.3d 31, 34 (1st Cir. 2002). There was no dispute that the suit involved prison conditions under Section 1983 and so Section 1997e(a) applied. Id. Because there was no dispute that the plaintiff failed to exhaust all administrative remedies, the lower court dismissed the claim and the First Circuit affirmed. Id.

Here, Defendants provided in their motion for judgment on the pleadings a description of the administrative process by which an inmate can seek redress for any grievances.[8] The administrative process is initiated by completing an application form provided by the Division. (Docket No. 39 at 20.) The inmate has fifteen (15) calendar days to file the application from the time he or she learns of the facts giving rise to the request. Id. No more than fifteen (15) days

---

[8] Defendants also provided an English translation of the Regulation for Considering Requests for Administrative Remedies Filed by the Members of the Correctional Population, as an exhibit to their motion.

13

**Civil No. 13-1166 (DRD)**

after receipt of the application, "the evaluating officer shall refer the request for remedy to the superintendent of the institution, the head of the halfway home, the medical director, or the coordinator of the Residential Treatment Center, the medical director [sic], and the supervisor of food services."  Id.  The evaluating official shall notify the inmate, in writing, within a maximum of twenty (20) days following receipt of the response to the request for remedy submitted by the superintendent of the institution, the supervisor of the halfway home, the medical director, or the coordinator of the Residential Treatment Center.  Id.  If the inmate disagrees with the response issued, he or she may request a review in a request for reconsideration with the coordinator, within twenty (20) calendar days from the receipt of the notification of response.  Id.  If the inmate continues to be dissatisfied with the resolution, he or she may request judicial review before the Puerto Rico Court of Appeals, in compliance with the Uniform Administrative Procedure Act, Section 4.2, Act. No. 170, August 12, 1988; P.R. LAWS ANN tit. 3, § 2172.  (Docket No. 39 at 21.)

Defendants also provided letters which certify that five out of the seventeen Plaintiffs did not even initiate any administrative proceedings.[9]  As such, Defendants met their burden of proving that Plaintiffs did not exhaust administrative remedies available to them before filing this suit.  The burden shifted to Plaintiffs to counter the evidence provided by Defendants.  However, Plaintiffs failed to do so in their Opposition to Defendant's Motion for Judgment on the Pleadings. (Docket No. 38.)   Essentially, Plaintiffs argue that the exhaustion requirement is not a jurisdictional requirement and so Defendants cannot obtain a judgment on the pleadings by arguing that it is.  (Docket No. 46 at 9-10.)  Plaintiffs seem to misunderstand Defendants' argument.

---

[9] The Plaintiffs for which Defendants provided the letters, stating that they did not exhaust remedies, are Iris Ruiz Rodríguez, Luz Rivera Charles, Lourdes Pardo Ortiz, Yomaira Irizarry, and Melissa Arce González.

**Civil No. 13-1166 (DRD)**

Defendants are no longer arguing that the Court lacks jurisdiction because of the failure to exhaust, but rather that the case must be dismissed because of that failure, not because of lack of jurisdiction.

Plaintiffs cite <u>Woodford</u>, 548 U.S. 81, and <u>Bock</u>, 549 U.S. 199, are two landmark cases on the subject, in support of their argument.  (Docket No. 46 at 9.)  This is correct to a certain extent. While Woodford and Bock do stand for the proposition that failure to exhaust is an affirmative defense to be proven by the defendants, they also make clear that if the defendant proves that the exhaustion requirement is not met, then the claims must be dismissed.  This is something Plaintiffs failed to include in their Opposition. (Docket No. 38.)  At any rate, Plaintiffs have failed to offer any evidence, or even make any allegations, contrary to the evidence provided by Defendants.

Plaintiffs are pussyfooting with the Court by playing word games.  In their Opposition to Motion to Dismiss, Docket No. 38, they conceded that they did "not include in their Amended Complaint any allegations regarding their filing administrative grievances with the Puerto Rico Department of Corrections."  (Docket No. 38 at 1.)  Yet Plaintiffs have not offered any evidence or made any allegations that they complied with the exhaustion rule or that the remedies were somehow unavailable to them.  In their Opposition to Defendants' Motion for Judgment on the Pleadings, Plaintiffs argued that "the applicability of the PLRA exhaustion requirement 'is limited to individuals who are imprisoned at the time the suit is filed.'"  Docket No. 46 at 10 (citing <u>Rivera Quiñones v. Rivera González</u>, 397 F. Supp. 2d 334, 340 (D.P.R. 2005)).  They then claim that "it is impossible for the Court to determine if any or all of the [P]laintiffs mentioned by the [D]efendants were released from confinement at the time of the filing of the Complaint."  (Docket No. 46 at 10.) However, Plaintiffs do not allege that they were not still imprisoned when the Complaint was filed.

Civil No. 13-1166 (DRD)

The Court finds Plaintiffs' litigation tactics unacceptable, as well as undesirable.  Thus, for the foregoing reasons this Court concludes that there were remedial measures available to the Plaintiffs and, those for who Defendants provided the letters, did not exhaust them.

### b.  PLRA and the "Physical Injury" Requirement

#### i.  Compensatory Damages

As previously discussed, Congress enacted PLRA to "reduce the quantity and improve the quality of prisoner suits."  Woodford, 548 U.S. at 94.  42 U.S.C. § 1997e(e) ("Section 1997e(e)") states: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."  While the First Circuit has not addressed the application of Section 1997e(e), the Third, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits have.[10]  They all agree that if the plaintiff does not allege a physical injury with their mental and/or emotional injuries, their claim for compensatory damages is barred under Section 1997e(e).  For example, the Eleventh Circuit relied on Section 1997e(e)'s "plain language" and found that it "unambiguously states that '[n]o Federal civil action' shall be brought for mental or emotional damages without a prior showing of physical injury.'"  The court agrees.

Here, Plaintiffs claim they have suffered "bouts of insomnia, depression, anxiety, and loss of appetite, provoked by the constant humiliation, harassment, isolation[,] and abuse they were subjected to by [D]efendants."  (Docket No. 27 ¶ 59.)  These are all mental and emotional injuries.

---

[10] Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001); Tribe v. Snipes, 19 Fed. Appx. 325, 326 (6th Cir. 2001); Cassidy v. Indiana Dept. of Corrections, 199 F.3d 374, 376-77 (7th Cir. 2000); Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002); Milledge v. McCall, 43 Fed. Appx. 196, 197 (10th Cir. 2002); and Harris v. Garner, 216 F.3d 970 (11th Cir. 2000).

Civil No. 13-1166 (DRD)

Thus, as a matter of law, Plaintiffs are not entitled to compensatory damages because they did not allege physical injury.

### ii.    Punitive and Exemplary Damages

Plaintiffs are also seeking "punitive and exemplary damages."[11]  Docket No. 27 at ¶ 62. Currently, the issue whether punitive damages are barred by the Section 1997e(e) is unclear.  The Federal Circuit courts are split. On one hand, a majority of the circuits who have addressed the issue of whether Section 1997(e) bars the award of punitive damages have held in the negative. See Thompson v. Carter, 284 F.3d 411, 416(2nd Cir. 2002); Allah v. Hafeez, 226 F.3d 247, 252 (3rd Cir. 2000); Hutchins v. McDaniels, 512 F.3d 193, 198 (5th Cir. 2007); Calhoun v. DeTella, 319 F.3d 936, 941 (7th Cir. 2003); Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002); and Searles v. Van Bebber, 251 F.3d 869, 881 (10th Cir. 2001); Washington v. Hively, 695 F.3d 641, 644 (7th Cir. 2012).  On the other hand, two circuits, the Eleventh and District of Columbia, have found that Section 1997e(e) bars such damages from being awarded.  Davis v. District of Columbia, 158 F.3d 1342, 1348 (D.C. Cir. 1998); and Al-Amin v. Smith, 637 F.3d 1192, 1198 (11th Cir. 2011).

The First Circuit has briefly touched over the issue, but hasn't decided on it.  In Kuperman v. Wrenn, the First Circuit indirectly touched on the subject of punitive damages, while analyzing if a plaintiff's claims were moot.  Particularly, the Court analyzed and found that despite the fact that plaintiff had been excarcerated while the appeal was pending; therefore injunctive and declaratory relief was no longer available as relief.  Yet the court recognized that monetary relief

---

[11] Although the Plaintiffs are not requesting injunctive or declaratory relief, the Court deems it important to mention that the majority of circuits who have considered the issue found that Section 1997e(e) does not bar claims seeking injunctive or declaratory relief.  See Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001); Harris v. Garner, 216 F.3d 970, 1000 (11th Cir. 2000); Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 808 (10th Cir. 1999); Davis v. District of Columbia, 158 F.3d 1342, 1346 (D.C. Cir. 1998); Zehner v. Trigg, 133 F.3d 459, 462 (7th Cir. 1997).

Civil No. 13-1166 (DRD)

was still available, specifically recognizing the availability punitive damages.  645 F.3d 69, 73 (1st

Cir. 2011).  "[A]s a former prisoner alleging a constitutional violation that occurred during his

incarceration, [Plaintiff] may obtain nominal and punitive damages under § 1983."  Id.  Thus, the

undersigned opines that the First Circuit's rationale constitutes an indirect recognition that Section

1997(e) does not bar punitive damages.  In addition, the Court stated:

> Although neither party discussed the Prison Litigation Reform Act, we note that it could preclude [Plaintiff] from recovering on his § 1983 claim seeking compensatory damages. See 42 U.S.C. § 1997e(e). Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Although some courts have interpreted section 1997e(e)'s limitation not to apply to constitutional claims, we need not reach the issue. It does not matter whether compensatory damages are available to [Plaintiff], because his requests for [. . .] **punitive** damages are enough to keep his claims alive. (Emphasis ours).

Kuperman, 645 F.3d at 73 n. 5 (citing Thompson v. Carter, 284 F.3d 411, 416–17 (2d Cir. 2002)

(collecting cases).).   As such, the First Circuit did not clarify in depth whether Section 1997(e)'s

limitation related only to constitutional damages or could be applied under other federal statutory

causes.  Nevertheless, the Kuperman court's reasoning is sufficient as to the instant case.

In allowing punitive damages under Section 1997e(e), the Third Circuit reasoned that

Section 1997e(e) only limits recovery "for mental or emotional injuries."   Allah, 226 F.3d at 252.

Therefore, should the plaintiff premise the punitive damages request on constitutional injury, then

Section 1997e(e) does not bar the cause.  Id.; see also Calhoun, 319 F.3d at 940 (reasoning "if the

same prisoner alleges some other type of non-physical injury, the statute would not foreclose

recovery, assuming that the damages sought were not 'for' any mental or emotional injuries

suffered.").  The deprivation of the constitutional right is itself a cognizable injury, regardless of

18

any resulting mental or emotional injury.  Calhoun, 319 F.3d at 940.  Additionally, the Third Circuit found that Section 1997e(e) does not bar punitive damages because "[t]he purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior."  Al-Hafeez, 226 F.3d at 252.  See also Calhoun, 319 F.3d at 941 (stating that punitive damages are not barred because they serve a different purpose than compensatory damages, which are the focus of Section 1997e(e)).  Punitive damages may be awarded when the defendant's conduct was "motivated by evil motive or intent, or when [the conduct] involves reckless or callous indifference to the federally protected rights of others."  Searles v. Van Bebber, 251 F.3d 869, 889 (10th Cir. 2001).

The D.C. Circuit disagreed with the majority and reasoned that Section 1997e(e) does not draw a distinction between punitive and compensatory damages.  Davis v. District of Columbia, 158 F.3d 1342, 1348 (D.C. Cir. 1998).  "It simply prevents suits 'for' mental injury without prior physical injury."  Id.  "[M]uch if not all of Congress's evident intent would be thwarted if prisoners could surmount § 1997e(e) simply by adding a claim for punitive damages and an assertion that the defendant acted maliciously."  Id.  The Eleventh Circuit agreed with the D.C. Circuit and also refused "to provide a carve-out for punitive damage claims."  Al-Amin v. Smith, 637 F.3d 1192, 1197 (11th Cir. 2011).  "Section 1997e(e) unequivocally states that 'No Federal Civil Action may be brought,' and 'no' means no."  Id. (citing Harris v. Garner, 216 F.3d 970, 984-85 (11th Cir. 2000)).

In light of the First Circuit's brief discussion of the issue, the undersigned follows the path the First Circuit was paving and, therefore, joins the reasoning of the majority of circuits that find that Section 1997e(e) does not bar punitive damages if they are premised on a constitutional claim

19

**Civil No. 13-1166 (DRD)**

and not mental or emotional injury. The undersigned finds this rationale extremely persuasive because while prisoners can seek redress through injunctive or declaratory relief, that hardly deters any future violation of constitutional rights. Considering the gravity of the situation, merely finding illegality is not enough.  Punitive damages serve the purpose of punishing the wrongdoer and deterring any future similar action.[12]  Here, Plaintiffs assert that their damages stem from the Defendants' "willful violation of [P]laintiffs' federally protected constitutional rights."  (Docket No. 27 ¶ 60.)  Thus, while Plaintiffs may not recover any compensatory damages, their claims for punitive damages are not barred by Section 1997e(e).  Consequently, the court now turns to analyze each constitutional violation alleged by Plaintiffs against Defendants in their personal capacities.

### c.  Claims Under Section 1983

Defendants allege in their Motion for Judgment on the Pleadings that Plaintiffs fail to state a claim under which relief can be granted.  (Docket No. 39 at 7.)  The Court will address each allegation in turn.  First, generally speaking, Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person 'acting under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." Grapentine v. Pawtucket Credit Union, 755 F.3d 29 (1st Cir. 2014).  Section 1983 does not create any independent substantive rights; it is only a procedural vehicle to vindicate constitutional and other federal statutory violations brought about by state actors.  See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979) (finding "Section 1983 . . . is not itself a source of

---

[12] The court found odd the lack of prospective injunctive relief remedy in the instant case pursuant to Ex Parte Young, 209 U.S. 441 (1908) and other Supreme Court jurisprudence cited *infra*.

**Civil No. 13-1166 (DRD)**

substantive rights, but [merely provides] a method for vindicating federal rights elsewhere conferred.")

Section 1983's "second element requires the plaintiff to show that the [defendant's] conduct was the cause in fact of the alleged deprivation." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (citing Rodríguez-Cirilo v. García, 115 F.3d 50, 52 (1st Cir. 1997)).  The standard is satisfied if the actor sets in motion a series of acts by others which the actor knows or should reasonably know would cause others to inflict constitutional injury.  Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 16 (1st Cir. 2011) (quoting Sanchez v. Pereira-Castillo, 590 F.3d 31, 50 (1st Cir. 2009).  Liability under Section 1983 cannot rest solely on a defendant's position of authority. Id. (citing Ayala-Rodriguez v. Rullán, 511 F.3d 232, 236 (1st Cir. 2007)).

However, the claim under Section 1983 may also be granted as a personal or official capacity based on injunctive or equitable relief.  See Mills v. State of Maryland, 118 F.3d 37, 54 (1st Cir. 1997) (citing Ex Parte Young, 209 U.S. 441 (1908); and Green v. Mansour, 474 U.S. 64, 68 1985)).

### i.    *Fifth Amendment Claims*

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . ."  U.S. CONST. AMEND. V.  The Supreme Court has held that "the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws."  Vance v. Bradley, 440 U.S. 93 n.1 (1979).  "The Fifth Amendment Due Process Clause, however, applies 'only to actions of the federal government –not to those of state or local governments.'"  Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8 (1st Cir 2007) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001)).

**Civil No. 13-1166 (DRD)**

In <u>Martinez-Rivera</u>, the First Circuit affirmed the dismissal of the plaintiffs' claims under the Fifth Amendment because they did not make any allegations that the Defendants were federal actors.  The instant case suffers the same infirmity.   In their Amended Complaint, Plaintiffs argue that Defendants violated "their equal protection rights guaranteed by the Fifth [ ] Amendment of the Constitution of the United States" when Defendants discriminated against them based on their sexual orientation.   (Docket No. 27.)   However, as Defendants argued in their Motion for Judgment on the Pleadings, that claims should be dismissed because Plaintiffs failed to allege that Defendants are federal actors, as a matter of fact, they are state actors and not federal actors. (Docket No. 39 at 8.)  Thus, it is pellucid that all claims under the Fifth Amendment are dismissed as the Plaintiffs did not possess a <u>federal government</u> action.  Simply stated, there is no Fifth Amendment claim in this case as to state actors.  <u>Martinez-Rivera</u>, 498 F.3d at 8.

### ii.   Fourteenth Amendment Claims

"The Equal Protection Clause of the Fourteenth Amendment appl[ies] should the person be detained beyond arrest; when the pretrial detention began, as well as after the detainees have been convicted. It is settled that [neither] pretrial detainees nor the convicted prisoners "forfeit all constitutional protections by reason of their conviction and confinement in prison." <u>Lopez</u>, 11 F. Supp. 3d at 50**.**  Although prisoners experience a reduction in many privileges and rights, a prisoner "'retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" <u>Sanchez</u>, 590 F.3d at 41 (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 95, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

The Equal Protection Clause of the Fourteenth Amendment mandates that similarly situated persons be treated alike absent a rational basis for doing otherwise.  <u>City of Cleburne v. Cleburne</u>

Civil No. 13-1166 (DRD)

Living Ctr., Inc., 473 U.S. 432, 440 (1985).  In the prison context, the Equal Protection Clause of the Fourteenth Amendment forbids a state from arbitrarily treating one group of prisoners worse than another.  Anderson v. Romero, 72 F.3d 518, 526 (7th Cir. 1995).   "Plaintiffs claiming an equal protection violation must first 'identify and relate *specific instances* where persons *situated similarly in all relevant aspects* were treated differently, instances which have the capacity to demonstrate that plaintiffs were singled out for unlawful oppression.'" Ayala-Sepulveda v. Municipality of San German, 671 F.3d 24, 32 (1st Cir. 2012) (internal quotations omitted).

Sixteen out of the seventeen Plaintiffs are, pursuant to the allegations, openly homosexual women.  (Docket No. 27 ¶ 28.) According to Plaintiffs, their segregation was founded on their sexual preference and their non-stereotypical conforming physical appearance.  Id. ¶ 27.  In the instant case, Plaintiffs argue they were roundup and segregated based on "sexual stereotypes".[13] Plaintiffs posit Defendants classified and segregated them by gender classification based on their sexual stereotype, in violation of the Equal Protection Clause.  "[G]ender classifications that rest on impermissible stereotypes violate the Equal Protection Clause, even when some statistical support can be conjured up for the generalization. And hostility toward nonconformance with gender stereotypes also constitutes impermissible gender discrimination." Latta v. Otter, 771 F.3d 456, 486 (9th Cir. 2014) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 874 (9th Cir. 2001)

---

[13]As to this matter, the court notes that in Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), the Court protected against discrimination in mistreatment against gays and lesbians based on substantive due process precedents, however, not on equal protection, but clarified that "precedents under the two rubrics use somewhat related tests as to levels of scrutiny-applied to liberty interests under the former and discrimination claims under the latter. Lopez, 11 F. Supp. 3d 46 at 51.

**Civil No. 13-1166 (DRD)**

(harassment against a person for "failure to conform to [sex] stereotypes" is gender-based discrimination)).

In the prison context, "[t]he appropriate analysis for an equal protection claim is whether the unequal treatment bears a reasonable relationship to legitimate penological interests." Griffin v. Coughlin, 743 F. Supp. 1006, 1010 (N.D.N.Y. 1990) (citing Benjamin v. Coughlin, 905 F.2d 571, 574-75 (2nd Cir. 1990)); see also Langone v. Coughlin, 712 F. Supp. 1061, 1066 (N.D.N.Y. 1989); and Williams v. Lane, 851 F.2d 867, 881 (7th Cir. 1988)). "This is true even when the constitutional right claimed to have been infringed is fundamental, and the State under other circumstances would have been required to satisfy a more rigorous standard of review." Washington v. Harper, 494 U.S. 210, 223 (1990). "Equal protection does not, however, require prison staff to treat all inmate groups the same when differentiation is necessary to avoid a threat to prison security." Kuperman, 645 F.3d at 78. When there is no suspect classification involved, or any deprivation of fundamental rights, the ordinary equal protection test is extremely deferential. Beauchamp v. Murphy, 37 F.3d 700, 707 (1st Cir. 1994).

Plaintiffs argue that Defendants violated their equal protection rights under the Fourteenth Amendment for discriminating against because of stereotypical classifications. Particularly, against them "because they perceived [P]laintiffs not to conform to gender stereotypes premised on their physical appearance, masculine mannerisms, and their open or perceived homosexuality." (Docket No. 27.) In essence, Defendants argue that Plaintiffs' complaint does not allege the existence of an unconstitutional practice or regulation used by the correctional facility where the allegations took place. (Docket No. 39.) To wit, Defendants contend that Plaintiffs grievance is merely "an isolated event in a specific time frame" that in no way escalates to a Constitutional

**Civil No. 13-1166 (DRD)**

violation.  Id. at 12.  Should the court find that there is a discriminatory practice; Defendants then assert that "prison safety and security are legitimate penological interests that the court must consider."  Id.

While it is true that Plaintiffs are not alleging that there is an unconstitutional regulation in place, it does not bar Plaintiffs from alleging their constitutional rights were violated under the Equal Protection Clause.  Defendants are not free to violate inmates' constitutional rights protected by the Equal Protection Clause and hide behind the fact that there is no written regulation or on-going practice in place.  Regardless, Defendants argue that the "segregation" was carried out for security reasons and done to avoid potential violence between inmates. (Docket No. 39.) Particularly, they argue that housing homosexuals with heterosexuals might cause friction between cellmates that potentially could lead to violence.  Id. at 13.   "The legitimacy, and the necessity, of considering the State's interests in prison safety and security are well established by [Supreme Court] cases."  Harper, 494 U.S. at 223.  Given the clear instructions from the Supreme Court that the United States Constitution provides "respect and deference" to the prison administrators' judgment, the court awards deference to Defendants and their decision to segregate Plaintiffs for their own safety. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 350 (1987).[14]

Nevertheless, the court is mindful of the early stage of this litigation, and is well aware that information regarding Plaintiffs' alleged constitutional violations are in Defendants' hands, thus, the court must hold a more lenient posture. See García-Catalán v. United States, 734 F.3d 100, 104

---

[14] See also Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 128 (1977) (finding "[t]he necessary and correct result of our deference to the informed discretion of prison administrators permits them, and not the courts, to make the difficult judgments concerning institutional operations . . . ."); Pell v. Procunier, 417 U.S. 817, 827 (1974) (stating "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response . . . courts should ordinarily defer to their expert judgment in [institutional security].").

**Civil No. 13-1166 (DRD)**

(1st Cir. 2013).  Plaintiffs have successfully pled sufficient facts to plausibly state a claim of Fourteenth Amendment Equal Protection violation due to gender discrimination. Regarding Defendants' entering Plaintiffs' Section in the middle of the night; taking them to a room where they were surrounded by the Tactical Operations Unit all day; subjecting them to daily homophobic insults; and feeding them after the rest of the population, Defendants do not allege there was a legitimate penological interest being served.

The court is confident that discovery will enlighten this determination at a later stage in the proceedings; and therefore finds that, at this juncture, Plaintiffs have pled sufficient facts to plausibly state a Fourteenth Amendment Equal Protection violation. Accordingly, Defendants' Motion for Judgment on the Pleadings as to Plaintiffs' Fourteenth Amendment claims is **DENIED**.

### iii.        Eighth Amendment Claims

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (internal citations and quotations omitted).  It is well-settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  <u>Id.</u> (citing <u>Helling v. McKinney</u>, 509 U.S. 25, 113 (1993)).  The Eighth Amendment is meant to prohibit "unnecessary and wanton infliction of pain," which is "repugnant to the conscience of mankind." <u>Kosilek v. Spencer</u>, 774 F.3d 63, 82 (1st Cir. 2014).

"The Supreme Court has held 'the unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by the Eighth Amendment, and '[a]mong unnecessary and wanton inflictions of pain are those that are totally without penological justification.'" <u>Silverstein v. Federal Bureau of Prisons</u>, 559 Fed. Appx. 739, 753 (10th Cir. 2014) (citing <u>Whitley v. Albers</u>,

Civil No. 13-1166 (DRD)

475 U.S. 312, 319 (1986) and quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).   In sum, to be considered cruel and unusual punishment, the conditions of confinement must: (1) be grossly disproportionate to the severity of the crime warranting punishment, (2) involve the wanton and unnecessary infliction of pain, or deprive an inmate of the minimal civilized measure of life's necessities.  See Rhodes, 452 U.S. at 346-47.  "An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective component associated with the deficiency."  Shannon v. Graves, 257 F.3d 1164, 1168 (10th Cir. 2001).

### 1)   *The objective component*

In order to successfully allege an Eighth Amendment violation, plaintiff must first plead facts which, if true, establish an objective component-that a "sufficiently serious" deprivation occurred. Only deprivations which deny 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Hunnewell v. Warden, Maine State Prison, 19 F.3d 7 (1st Cir. 1994) (quoting Wilson v. Seiter, 111 S. Ct. 2321, 2324 (1991)).

"Extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." Hudson v. McMillian, 503 U.S. 1, 9 (1992).  See also Rhodes, 452 U.S. at 366 (housing two inmates per cell was not unconstitutional as it did not lead to deprivations of essential food, medical care, or sanitation); Jackson v. Meachum, 699 F.2d 578, 581 (1st Cir. 1983) (indefinite segregated confinement in a facility that provided satisfactory shelter, clothing, food, exercise, sanitation, lighting, heat, bedding, medical and psychiatric attention, and personal safety,

**Civil No. 13-1166 (DRD)**

but virtually no communication or association with fellow inmates did not constitute a violation of the Eighth or Fourteenth Amendments); <u>Tillery v. Owens</u>, 907 F.2d 418, 428 (3rd Cir. 1990) (citing multiple cases "where the denial of medical care, prolonged isolation in dehumanizing conditions, exposure to pervasive risk of physical assault, severe overcrowding, and unsanitary conditions have all been found to be cruel and unusual under contemporary standards of decency."); and <u>Silverstein</u>, 559 Fed. Appx. at 753 (quoting <u>Hewitt v. Helms</u>, 459 U.S. 460, 468 (1983) "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.")).

According to their pleadings, Plaintiffs were humiliated, harassed, isolated and abused by Defendants when they were herded and isolated to a separate unit, based on sexual-stereotyping. (Docket No. 27 ¶¶ 33-38.)   Plaintiffs were abruptly escorted to Section 7 of the Vega Alta Women's Prison by members of the Tactical Operations Unit where they remained segregated for approximately five (5) days.  <u>Id.</u>  During those days, Plaintiffs were subjected to daily homophobic insults from prison officials and were fed after the rest of the prison population.  (Docket No. 27 ¶¶ 40-42.)  Plaintiffs were not afforded enough serviceable beds so they had to take turns sleeping, while some would sleep on the floor.  Docket No. 27 ¶ 39.  Lastly, Plaintiffs did not receive any recreation during their segregation.  <u>Id.</u> ¶ 40.  The custodial officers told Plaintiffs that "women eat first, and then the butchies."  <u>Id.</u>  During the meals, a custodial officer was assigned to each Plaintiff "who would order her where to sit and eat."  <u>Id.</u> at ¶ 43.  The custodial officers would stand over Plaintiffs as they ate and many would threaten Plaintiffs with their pepper spray.  <u>Id.</u>

The length of the conditions is also taken into consideration.  "Unpleasant conditions of confinement "might be tolerable for a few days and intolerably cruel for weeks and months".

Surprenant v. Rivas, 424 F.3d 5, 20 (1st Cir. 2005) (citing Hutto v. Finney, 437 U.S. 678, 687, 98 S. Ct. 2565, 57 L.Ed.2d 522 (1978)).  In this case, Plaintiffs allege to have been subjected to "cruel and unusual" confinement conditions for a period of five (5) days.

However, in Brown v. Plata, 131 S. Ct. 1910 (2011) the Supreme Court found that overcrowding caused an inadequate strain in medical and mental health facilities; overburdened limited clinical and custodial staff; and created violent, unsanitary and chaotic conditions that contributed to the Eighth Amendment violation.  Moreover, in Rodriguez-Sanchez v. Acevedo-Vila, 763 F. Supp. 2d 294, 303 (D.P.R. 2011), this Court found an Eight Amendment violation for the combination of inhumane conditions that plaintiff was subjected to for thirty-six (36) days where his cell had a clogged toilet, shower water running through it, and was unlit.

Nevertheless, not every deviation from ideally safe conditions constitutes a violation of the constitution.  Hunnewell, 19 F.3d at 4.  "Whether prison conditions are sufficiently onerous to establish an Eighth Amendment violation is a purely legal question determination to be made by the court."  Hickey v. Reeder, 12 F.3d 754, 756 (8th Cir. 1993) (citing Hudson, 503 U.S. at 6).

Considering that this case has not reached the discovery stage, thus, information regarding Plaintiffs' alleged Eight Amendment violations is currently in Defendant's hands, the court steers with caution finds that Plaintiffs have sufficiently pled enough facts to state an Eight Amendment claim for the conditions of confinement they were subjected to by Defendants.  "District courts should accord "some latitude" in cases where a material part of the information needed is likely to be within the defendant's control. (more latitude is appropriate in cases where it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.)"  García-Catalán, 734 F.3d at 104.

29

**Civil No. 13-1166 (DRD)**

Consequently, the court finds that the Plaintiffs' conditions-of-confinement, at this juncture, are sufficiently serious to plausibly state a claim for an Eighth Amendment violation.  Accordingly, Plaintiffs' conditions-of-confinement could give rise to the level conditions that violate the Eight Amendment.

### 2)  *The Subjective component*

A satisfied subjective prong means that prison officials had "a sufficiently culpable state of mind" in that they showed deliberate indifference to an inmate's health and safety. See Farmer, 511 U.S. at 834, Leavitt; 645 F.3d at 497.   For conditions of confinement cases, the standard is "deliberate indifference" to inmate health or safety.  Id.  See also Lakin v. Barnhart, 758 F.3d 66, 71 (1st Cir. 2014) (quoting Farmer, the Court emphasized that under the Eight Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." 511 U.S. at 833). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Id.  In sum, in order to satisfy the subjective component, a plaintiff must show: "(1) the defendant knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk."  Id.  "Merely establishing deliberate indifference on a subjective level is insufficient if the medical needs are not serious enough to necessitate action under the Eight Amendment." Berrios-Romero v. Compass Grp. N. Am., 727 F. Supp. 2d 54, 59 (D.P.R. 2010).

Plaintiffs posit Defendants Ortiz and Sgt. Marrero had knowledge, witnessed and directly participated in their segregation.  (Docket No. 27 ¶¶ 35, 45.)  Moreover, they also allege to have been subjected to derogatory and harassing homophobic comments by Ortiz and Sgt. Marrero.  Id. ¶ 45.  Lastly, Plaintiffs posit that the sexual stereotypical segregation was "conceived and

Civil No. 13-1166 (DRD)

coordinated" by Ortiz and Nestor Velazquez and put in order by Ortiz, Velazquez, Jackson and unidentified Defendant Roe. Id. at 51.

Consequently, the court finds that Plaintiffs sufficiently pled the subjective requirement of the Eighth Amendment violation. Accordingly, Defendants' Motion for Judgment on the Pleadings as to Plaintiffs' Eighth Amendment claim is hereby **DENIED**.

## VI.     Conclusion

In view of the foregoing, the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction at (Docket No. 34) is hereby **GRANTED in part and DENIED in part.** Particularly, the claims dismissed are those pertaining to Plaintiffs Iris Ruiz Rodriguez, Lourdes Pardo Ortiz, Luz Rivera Charles, Melisa Arce Gonzalez, and Yomayra Irizarry who have failed to exhaust administrative remedies. Moreover, Defendants' Motion for Judgment on the Pleadings is **GRANTED in part and DENIED in part**. Plaintiffs' Fifth Amendment claims are dismissed with prejudice in their entirety. Plaintiffs' Eight and Fourteenth Amendment claims remain, as described above, and they may only recover punitive damages.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2015.

s/**Daniel R. Domínguez**

**DANIEL R. DOMINGUEZ**

**United States District Judge**